CATCHINGS *v.* EDMONDSON *et al.*

(Division B. May 24, 1943. Suggestion of Error Overruled June 14, 1943.)

[13 So. (2d) 630. No. 35378.]

(Division B.   June 14, 1943.)

[13 So. (2d) 924.   No. 35378.]

**Henley, Jones & Woodliff**, of Hazlehurst, for appellant.

**L. F. Easterling** and **Hilton & Kendall**, all of Jackson, for appellees.

**L. F. Easterling** and **Hilton & Kendall**, all of Jackson, for appellees, on suggestion of error.

Argued orally by **W. S. Henley,** for appellant, and by **R. L. Jones,** for appellees.

**Griffith, J.**, delivered the opinion of the court.

On January 1, 1934, R. B. Edmondson was the owner of the tract of land in Copiah County described as follows: All that part of the SE¼ of the SE¼ Sec. 7 Tp. 1, N. R. 1 *West,* lying South of the Mount Pleasant Road, containing about 31 acres.

Proof was made, and it is undisputed, that this was the only land which Edmondson owned in that county.

On the date aforesaid Edmondson was indebted to Lotterhos & Huber Company in the sum of $530.79, and to evidence same he executed to them his promissory note due on July 1, 1934, with six per cent interest from date, etc. To secure the indebtedness he executed and delivered at the same time a deed of trust, intending thereby to include therein the land above described, but in the deed of trust the land was described as being in Range 1 *East,* the description being otherwise identical.

Default was made in the payment of the note, and on February 5, 1938, the trustee sold the land described in the deed of trust at public sale to appellant, Will Catchings, whose bid therefor at the sale was $300, which sum Catchings paid to the trustee and the trustee executed to Catchings the trustee's deed which conveyed not the land intended to have been described in the deed of trust, but the land as actually therein described—land situated six miles away.

Upon the purchase at the trustee's sale Catchings immediately took possession of the land first above described, that is to say of the land intended to have been conveyed in the deed of trust, and with knowledge on the part of the mortgagor that the possession was being taken by Catchings in virtue of the foreclosure by the trustee, the mortgagor not being aware, so far as this record discloses, that there had been any misdescription in the deed of trust, and apparently Catchings did not then know of the error; and Catchings has at all times since remained in the exclusive possession of the property as first above

described. Sometime after his entry into possession, but exactly when is not shown, the note of the mortgagor above mentioned was transferred in writing by Lotterhos & Huber Company to Catchings.

On June 12, 1940, R. B. Edmondson died intestate, after which on October 30, 1940, his heirs at law filed their declaration in ejectment against Catchings. On motion of the latter, the case was transferred to the chancery court and such proceedings were thence had in that court that a decree was rendered reforming the deed of trust so as to make it describe the land as first hereinabove described, and ordering that unless the complainants therein, the heirs at law aforesaid, should pay to Catchings the sum of $339 within a period of thirty days, the land would be sold by a commissioner of the court, etc. It will thus be seen that the court allowed Catchings only the amount bid by him at the trustee's sale plus $39 in taxes paid on the land by Catchings, whereas it was and is the contention of Catchings that the decree should have awarded him the full amount of the debt as evidenced by the note, with interest, etc., as well as the taxes paid, and this is the principal question debated on this appeal.

Had Lotterhos & Huber Company purchased at the trustee's sale, and had thereupon gone into immediate possession with the knowledge of the mortgagor, as Catchings did, there would be no difficulty in a solution of the question presented. It has often been ruled by this court that where a mortgagee enters into possession of property under foreclosure, he is entitled to retain possession until the mortgagor or those claiming under him shall pay the mortgage debt, even though the foreclosure proceedings be wholly void and as such had conveyed no title whatever; and that this right to retain possession is not affected by any statute of limitations which otherwise would run against the debt. The cases so holding have been recently reviewed in Hubbard v. Massey, 192 Miss. 95, 4 So. (2d) 230, 494, and in Wirtz v. Gordon, 187 Miss. 866, 184 So. 798, 192 So. 29.

And there is no reason whatever, and certainly none founded in the principles of equity, why this rule shall not apply to a case where the foreclosure has conveyed no title arising out of the fact that the land was misdescribed in the deed of trust but when it is clear, as it is here, that the land of which possession was taken by the mortgagee, and with the knowledge of the mortgagor, is the land which was intended to be included in and conveyed by the mortgage, and we therefore hold that the stated rule does apply to such a case.

Catchings who now owns the mortgage debt, by reason of the transfer of the mortgage note to him and having taken and retained possession as aforestated, occupies precisely the same position and holds the same rights as had Lotterhos & Huber Company taken possession after condition broken, and had retained the mortgage note as their own for the balance due on it; wherefore he cannot be ousted of his possession until the full amount of the mortgage debt, plus taxes and improvements, less the value of the use of the land, shall be paid to him.

It has been argued by appellees that Catchings is in no position to demand a tender of payment, because he did not raise that point either by demurrer or in his answer. The rule on that subject is stated in Griffith Miss. Chan. Prac., Sec. 525, p. 567: "If the bill show on its face that the requirements as to tender have not been met the defendant may interpose a special demurrer. If it do not so appear it may be raised by a plea in the answer; but inasmuch as it is a matter which, in its procedural aspects, may be waived it must be raised promptly and before the hearing on the merits—else it will not stay the hearing in chief, and will operate only to the extent that the court will insert in the final decree such conditions as will fully protect the interests of the opposite party and as will effectuate the maxim which requires equity to be done by those who seek equity.".

Here the case proceeded on the merits, and therein it was developed that as a substantive matter Catchings

could not be deprived of his possession except by payment of the mortgage debt, from which it follows that any decree to affect his possession must carry as a condition the requirement that he be first paid the debt, and as a further consequence that any new foreclosure, since this would oust him unless he should become the highest bidder, must be for the mortgage debt and not for only a part thereof as was attempted here.

It has been argued also that inasmuch as it was denied in the answer to the cross-bill that anything was actually due on the mortgage note and because there was an averment in the said answer that the note was usurious, Catchings should recover nothing on the note because he made no proof addressed to the stated averments. Catchings had and introduced the note duly assigned to him, and thereupon the burden of proof as to payments or usury or the like was upon appellees, not upon Catchings, and appellees made no attempt whatever to meet that burden.

Reversed and remanded.

On Suggestion of Error.

**Anderson, P. J.**, delivered the opinion of the court on suggestion of error.

The mortgagor Edmondson is not concerned with transactions or payments between the mortgagees, Lotterhos & Huber and Catchings, which are subject to adjustment between them by decree. Edmondson's liability and Catchings' rights now arise out of the simple fact that in view of our decision there is due by Edmondson a note on which he had paid nothing. When the deed of trust is reformed and foreclosed, the liability of Edmondson is controlled not by transactions between Lotterhos & Huber and their assignee Catchings but by the transaction of the note and the deed of trust which now remain unsatisfied and subject to foreclosure for the amount of

indebtedness against which there are no credits recognized as having been made by or for the account of Edmondson.

Edmondson has no interest whatever in the outcome of the reformation and foreclosure of the deed of trust unless the land brings more than the mortgage indebtedness. Lotterhos & Huber and Catchings alone are concerned. If the land brings no more than the mortgage indebtedness and is purchased by Catchings he will have to pay no part of the purchase price to anyone, for the simple reason, as mortgagee, it will belong to him. If someone else than Catchings purchases, the result will be the same; as mortgagee the purchase price will be due him. If, however, the land brings more than the mortgage indebtedness the proceeds will go first to discharge that indebtedness and, of course, the expense of reformation and foreclosure, and the balance will go to Edmondson, the mortgagor.

When Catchings paid Lotterhos & Huber the $300 he bid at the first foreclosure sale and thereafter acquired the balance of the mortgage indebtedness from them, whether he paid anything for it or not, under the law he simply stepped into the shoes of Lotterhos & Huber.

Overruled.